Next matter is Royal v. Durison Next matter is Royal v. Durison I certainly will attempt to make some sense of the case. And I would like to reserve three minutes of my time for rebuttal. First of all, help me with who was sued. I have no idea why Ms. Miller is still in the case at all. Ms. Miller is not in the case, Your Honor. We released her from the case while this case was pending after the briefing was concluded. You can see already we're making progress, Mr. Mouser. This is great. Now, help me understand why Mr. Durison is in the case. All of your client's sentences were state sentences. And he served his time. I believe that he pled in the Philadelphia Court of Common Pleas, if that's correct. Right, he pled in county court. That's how you get to state prison. But his state sentences were state sentences under Pennsylvania law. None of them were county sentences. None of them was before us anyhow. He was incarcerated in either Camp Hill or Raderford in terms of serving his sentence as opposed to pre-sentencing commitment. How do we get in the case the person who's in charge of the calculations for the county facility when the person that didn't release him was the State Department of Corrections? Well, I believe that Mr. Durison in this case, in the red brief, says at least five times that he was the appropriate person to request a recalculation of the sentence. Well, I'm sure Mr. Durison says that. And Mr. Durison also says the third and let him out was an Eighth Amendment violation. But that doesn't make it so. I would say it would be a lot easier if we could just look at what's in there and say, oh, it must be true because that's the allegation. I could have watched some football last Sunday if that was this simple. Unfortunately, I'm sorry, but I don't have the answer to your question as to why Mr. Durison would be responsible for calculating Mr. Royle's sentence. Isn't that crucial since you're trying to get liability against him? Isn't it crucial that you have some understanding as to how he's liable? Well, it certainly is crucial. Although in this case, Mr. Durison did, in fact, credit Mr. Royle with the time that he served in 1999. And I think that shows that Mr. Durison was, in fact, the official who was responsible for calculating Mr. Royle's sentence. My guess is what he did was that he informed the people, wherever Royle was at the time, that Durison informed the people at either Camp Hill or Radiford about how much time Durison had spent in custody prior to being sentenced and, therefore, how much jail time he should have credited against the state sentence. That's probably what he did. And in the Jerkin and the exchange of letters, it may have been expressed that it was certainly interpreted as Durison crediting him for the time. He doesn't have the legal ability to credit for it. A county official cannot credit somebody for a state sentence. That's up to the Department of Corrections and possibly the parole board, which gets me to the other series of questions I wanted to see if you could help me out with. Did he ever get before the parole board? Did he ever bring this problem to the attention of the parole board? It is my understanding that he did not bring this before the parole board. Well, if he's in for three and a half to seven years, at the end of his three and a half years, and given the six months he says he should have gotten, apparently he should have gotten the six months, at the end of three years, he's eligible for consideration for release. And I couldn't figure out why he's not saying to somebody, hey, I've got to get before the parole board, because he may have been able to get out in three and a half years, or three years, as opposed to staying in for seven. Just a minor correction. On his violation of parole sentence, the sentence was for one and a half to three years. But I agree with you that at some point he was eligible to be released. And so far as the record, as I have seen it, I'm not aware that he was ever before the parole board on that question. And unfortunately I do not know. Where did he serve that one and a half to three year sentence? Well, he served it in Camp Hill, in part, and I can certainly find that for you in the record. And Graterford has mentioned it in one of the briefs. He served it in, he was transferred a couple of times during that period. It's in Mr. Royal's deposition. But even though he was transferred to a couple of different institutions, it seems to me there's only one person who is responsible, legally, for knowing when he gets out. And that's why there is one person, because I don't know how many state correctional institutions there are, but there are a lot of them. And if we had a situation where the person at Institution A was responsible for figuring out when a defendant gets out of Institution B, because the defendant was housed at Institution A before he went to Institution B, nobody would ever get out. And that's why it seems to me you've got one person in the state, and my guess is it would be the Secretary of the Department of Corrections, or the Commissioner of the Department of Corrections, who is responsible for those kinds of legalities. He doesn't obviously do it, but there are people under him that do it. And the primary parties would be the rule board, because they would be charged with knowing when he is eligible to first be released. Well, I think, Your Honor, that the time that Mr. Royal served in 1983 and 1984 was served in a county jail, and that time, therefore, He was awaiting bail. He didn't make bail. He was arrested. He made bail. He fled. He was rearrested on new retail theft. And they then apparently put a detainer on him for failure to appear. And he was held, because he couldn't make bail the second time because of the flight. He was held until sentenced on the second retail theft arrest. That's correct, Your Honor. But that time when he was held in the county facility, and that's what you're arguing, that should have been counted against the sentence he subsequently received. Well, it seems to me that the official who is responsible for calculating time in the county system, which is Mr. Durrison, would be the same person who is responsible for then notifying the state authorities of that time should be credited, as you mentioned earlier. And what I was referring to earlier, it was at page 45A of the appendix, there is a memorandum from Mr. Durrison to the clerk of quarter sessions that states that Mr. Royal's time should be credited for which he was held in 1999. And again, it seems to me that... In a way, I saw that, and I couldn't figure out why Durrison would be alert. Because the clerk of quarter sessions could care less. Well, you clearly have more experience in this area than I do. I certainly was not a judge in that court. Nevertheless, 45A of the appendix does show that Mr. Durrison believed he had the authority and, in fact, exercised the authority to credit Mr. Royal with his time served in this case. I'd like to move on for a moment to the issue of the summary judgment. This court has held in a sample against Deeks that in order to prevail on an Eighth Amendment claim, the plaintiff must show three elements. Number one, that the prison official was aware of the claim. Number two, that he failed to act or acted with deliberate indifference to the plight of the prisoner. Excuse me, that he failed to act or acted only ineffectually under circumstances that indicate deliberate indifference. And third, causation. The district court here held... Are you saying that the deliberate indifference has to rise to the level of shocking the conscience? No. You're just saying deliberate indifference doesn't have to shock the conscience? No, it does not. I believe that the court in the sample was clear on that and specifically said it does not have to shock the conscience. Well, here we have at least one handwritten response, but I think there are two handwritten responses. There are a lot of letters from the client to Durrison. And I waded through the red brief, actually, last night, and I tried to make a chart of when he was arrested, how much time he's entitled to on that arrest, how you credit it, given his offenses, not only in Philadelphia County, but also in Montgomery County, the VOP that he had, when the VOP was imposed, how much of the VOP sentence served as back time on the offense for the VOP, vis-a-vis the other Philadelphia County sentences. And I'm still not sure whether or not the Philadelphia County sentence was made to run concurrent to the Montgomery County sentence. It appears that it was, but I'm not sure about that. But I couldn't figure it out. I just brought my chart in to show you. I did it before, and I couldn't figure it out either. I couldn't figure it out. I hadn't been violated two years after his probation expired. How does that happen? You can't be violated. Well, I can clarify that to some extent. There was a sentence. And keep in mind deliberate indifference. Let's assume he was not a shock to the conscience. How in the heck can you prove that standard of neglect to get liability until 1983? Mr. Derrison never came to a conclusion one way or the other whether Mr. Royal was entitled to the time that he was seeking. He had a couple of responses. He said, I doubt that I can find this because it was a long time ago. And under this court's case of Tartler, a failure to investigate a claim can show deliberate indifference. And Mr. Derrison's responses in this case show that he failed to conduct any investigation. First he said, I doubt that we can find this. He did say that some records were missing, the microfiche was missing. After Mr. Royal brought this case, he submitted an affidavit in which he said that the records were destroyed. But that affidavit doesn't say who he found that out from. It doesn't say who he asked or how he even knows that they were destroyed. He also said that he did not have personally any records with regard to the time that was at issue. But his first response, the fact that this was a state matter and he doubted he could find the records, that took care of that. But he's right about that, isn't it? Because it's a state matter, he's a county custodian. As this court said in Tartler, he has a responsibility to investigate Mr. Royal's claim. And he's not relieved of that obligation simply because he doesn't happen to have the records in his office. Mr. Royal himself provided documentation that shows the dates of his arrest and the offenses for which he was being held. And that was sufficient for Mr. Derrison to calculate Mr. Royal's sentence. In Tartler, the person who did not perform the investigation was the person who was legally obligated to investigate. It's not really clear here, is it, that Derrison is the one who's legally obligated to investigate? I'm not sure that that issue is in this case. Well, you're trying to get him liable for a violation of a duty. Well, the Pennsylvania Supreme Court in McRae said that the Department of Corrections or the appropriate official has the responsibility to credit the prisoners with all time they are entitled to under the statute. The problem is Derrison is not an employee of the Department of Corrections. He's an employee of the County of Philadelphia. That's exactly my point. Well, nevertheless, Mr. Derrison, in this case, credited Mr. Royal with time against this sentence, and he certainly had the ability to, and believed he had the ability, and yet failed to act on Mr. Royal's request for time in 19- Mr. Metzler, putting these facts aside for a second, assuming you had the right person, why isn't this case barred by Heck v. Humphrey? It's not barred by Heck v. Humphrey for two reasons. First, Mr. Royal is successful on his claim. The success on that action would not call into question either his original sentence- Where could he be successful? Excuse me? Where is his remedy so that he can achieve a favorable termination and thus not be barred by Heck v. Humphrey? I believe that, well, I don't think that there is any favorable termination requirement in this case. What about our case of Williams v. Consovoy, which was a very recent case, where we reaffirmed the favorable termination requirement of Heck v. Humphrey? In Williams v. Consovoy, the issue there was a revocation of parole. Whatever the issue was, we confirmed what we had said earlier, that there must be a favorable termination before one can come in under 1983 seeking relief. There certainly must be a favorable termination, but only, as Heck says, if the case would call into question either the judgment of conviction or the sentence. In Heck, the court said specifically that the action, even if successful, would not demonstrate the invalidity of any outstanding judgment, it should be allowed to go forward, and that's exactly what we have here. My next question here, initially, before we get to any of the who's on first, who's on second, what are you seeking? Are you seeking just a recalculation of time? No, Mr. Royal is seeking monetary damages for the period that he served beyond his lawful sentence. Based on a miscalculation of time served, as opposed to trying to upset his sentence, which would bar it. There is an authority in the Pennsylvania courts, which is not mentioned in either party's briefs, and I'd just like to cite that to you for a moment. It's Commonwealth v. Perry, and it's a superior court, and the court there said that a challenge to the Bureau of Corrections calculation of the term in prison is, and I'm quoting here, neither a direct nor even a collateral attack on the sentence, and it's 563 Atlantic 2nd, 511 at 513. I'd like to see if I have any time left for rebuttal. Well, you do have time. We ran you over with our questions, but you do have time. You served three minutes, I think? Yes, sir. Okay. Thank you. Thank you. Ms. Brewer? May it please the court, Elise Brewer on behalf of FLE Robert Durson. If I might, the first point I wanted to address is why Hackbar's plaintiff's claim. In order to do that, what I want to do is kind of give the factual complex of this case, because some of your— Well, we'll do that, but I can't figure— Mr. Meltzer is at least right about that, isn't he? Because if he were to prevail somehow here and obtain damages, that would not in any way impugn the integrity of the underlying commitment. He's just saying, yeah, it was properly sentenced. Yes, it was. It just kept me in too long. Well, no, because what success on that claim, even if it translates into relief in the form of damages, is that either Judge Mayer or Judge Lowe committed reversible error in 1984 when they didn't give him credit for time served. No, they gave him a sentence of three and a half to seven years, gave him credit for time served. They did not give him three and a half to seven? No, no. What he was given was a two to four from— Oh, that's the UMP. No, excuse me. That's Fair Juvenile Court. No, no, no. We're going to go back to 1984. Please, please. Let's all go back to 1984. In 1984, the first sentence given by Judge Mayer was a two to four on all three counts of retail theft plus three years of probation. So it's a nine-year probationary term. Consecutive. Consecutive, correct? No, no, no. Please. I mean, I'm trying. Let me try with you. You can also tell me. I couldn't figure this out. This doesn't go to the legal issue here, but I'm trying to make— Four plus nine, right? Four plus nine. That's 11. That is 11. Plus, then four months later, he would be— Don't remind me of that. Stay with the sentencing and the three retail thefts. Four plus nine is not 11. Four plus nine is 13. And your jersey is 11. Please. Now, conspiracies in New Jersey. Conspiracies are in New Jersey. But the initial commitment— If he gets two to four on three retail thefts— Correct. Yes. In Pennsylvania, unless they change that, to get to a third-degree felony, you have to have three retail thefts. So when he's sentenced on three retail thefts, only the third one can be a felony retail theft. The other two are misdemeanor retail thefts. So how can we get a sentence of two to four years consecutively— I mean concurrently—on three retail thefts, two of which have got to be misdemeanors? Mr.— Let me try to put it this way. Okay. Let's go to sentence one, which is Judge Mayer's sentence. The second sentence is Judge Lowe's sentence in Montgomery County. Okay. Judge Mayer gave him what? Pardon? Judge Mayer gave him what? Judge Mayer gave him two to four running concurrently on all three retail theft charges. Okay. In each— Two? Well, no, you could do that. That's a misdemeanor sentence. I thought he had two retail theft charges. No, he had three. He pledged to three in November of 1983. He was given two to four on each of those three. I thought he pled guilty to one count of failure to appear. So there's no such charge, is there? No, I don't believe so. He pled to three retail thefts. Okay. In 1983. But regardless— Regardless, I mean, I realize I'm talking to a former judge of the Court of Common Pleas here, but— Right now, having read this brief, I deeply regret it. Yeah, okay. Because how can you plead guilty to a charge of failure to appear? Yeah, well, that's— Because that was your fault. No, no, he was held on failure to appear, but he pled to three counts of retail theft, two to four years on each, followed by three years of probation on each. That counts for nine years of probation. Then he was sentenced by Judge Lowe in Montgomery County to a one-and-a-half to three-year sentence to be imposed consecutively to the Philadelphia sentence. Those two sentences— You mean consecutive to the probation, or just consecutive to the time in? I guess. Consecutive to time in. Consecutive to time in. And what happened was that— That's way too far. Okay. I'm feeling consensus, but I'm not sure. That those two sentences were then aggregated to a three-and-a-half to seven. Okay. He served four years on the three-and-a-half to seven. When he entered the state system, he claims he realized— And that's in his deposition. He didn't get credit for time served. The place to raise that initially is with the sentencing court, either with Judge Lowe or with Judge Mayer on direct appeal. He didn't do that. Instead, he waited 15 years until 1999 when he's serving his VOP sentence, and then in September of 2000, he raises it in his PCRA. Well, after 30 days, he couldn't raise it with the sentencing judge. But he could have filed a motion to correct the sentence with Judge Mayer, and he went into Graterford on the charges four days after he was sentenced by Judge Lowe. So what happened to the three-and-a-half to seven? Was that just never a sentence he got? No, he got it. It was an aggregate— The three-and-a-half to seven. The aggregate of the other sentences. The aggregate, and the aggregation was the subject of his habeas petition. So there are no felonies here? Yeah. Well, then he is right. Then Derrison is the guy. Then how did he go to the state penitentiary if there are no state sentences that were imposed? These were county sentences. What happens in terms of county and state service time is that sometimes just there's— sometimes people go up to SCI to serve state— to serve county time because of crowding, or they'll go up there because there's sort of a back-and-forth or there's another detainer pending. So what's happening— this is—he did plead to a third-degree felony. So in that extent, he should be serving in the SCI. It is state time. So I'm sorry to be confusing you about that. I'm sorry. You know, the retail effect, you're saying the third retail effect was— Yeah, so that's why he was up at the state— I don't— Now, didn't the case of Conwell v. Williams, the Superior Court case, 1995, say that you could— the time served on an original sentence must be credited to a probation violation sentence? And doesn't that— wasn't that an error, a calculation error, on Derrison's part? Well, calculation error, no calculation error. The place to raise that is with the sentencing court, either on VOP or at the time of the initial sentencing. That's what the court found in McRae because there the court can correct it. And since McRae, what's happened is that if you go to the Department of Corrections and say credit me for time served, Commonwealth Court, because of McRae, says you can't—we can't credit you. We can't order DOC to credit you unless we have a court order saying credit him for time served. So he didn't know that he wouldn't get the six months, really, until he served a day in excess of his maximum sentence. Correct? He may have assumed that it worked. That it worked. He was hoping that it would be fixed. Seven years, not even seven years. Not even seven years. But he allegedly, he says, oh, I have my commitment sheet from Graterford. I didn't get my commitment credit. That's what he believed. Do you believe he was owed six months? No, not at all. Oh, you don't? I thought that was stipulated, too. No, no. But in terms of this action— Why not? Why not? Because he was— I thought that was the only thing that was clear about this case. I'm so glad you just broke my heart, Mr. Rowe. I'm sorry. No, I mean, the reason— Whatever you were feeling before was not consensus. Whatever you were feeling before was not consensus. Well, I'm sorry to hear that. So am I. But, no, this case is challenging, but that, too. But I think— Did you go to a Quaker school? The only people I've ever heard you speak of as challenging and consensus are Quaker. Both my kids go to Quaker school. I worked as a crisis counselor for a while, so I think you kind of, you pick up that, you pick up that vocabulary. Why isn't he owed the six months? He isn't owed the six months because he served four years on— basically because he served four years on two sentences. Concurrently. You know, he served four years on two sentences. He didn't serve four years on one sentence. But they were concurrent sentences. No, I'm sorry. They were consecutive sentences. The Philadelphia and the Montgomery sentences. The two to four were concurrent. The two to four were concurrent, and the time in was combined with the Montgomery County sentence. Okay, that was consecutive. Which was consecutive. Some total of time served on both of those sentences was four years. Two sentences. He served sentence one, he served sentence two. Sentence one plus sentence two equals four years. But they were aggregated, weren't they? They were aggregated. So they were treated as one, and the maximum sentence was seven years. So I've just shown my mathematical ability, but I think that means he was owed six months. No, it does not. You might want to refer us to the fact that Judge Berry is still having problems with how you add up to get to 11. No, I figured that out. I figured that out. Well, no, that's four years plus three years on parole, and then probation terms started. That's how his VOP happened in 99, and that was actually the subject of his habeas petition. I still don't know why he didn't get the six months. Ms. Brewer, let's assume he was at six months. Okay. Where are we then? Where we are then is first we're barred by Heck versus Humphrey. Explain that to me, because I don't understand why we're barred by it. Because the place to raise those claims, this whole conversation, painful as it has been, the place to raise that is with either the court initially that sentenced you on direct appeal or on a PCRA. If that doesn't go to a Heck v. Humphrey problem, that might go to a procedural default in the habeas sense, but that's not a Heck problem. The Heck problem is we simply say that if in winning, his victory would undermine the validity of the underlying commitment, then you can't do that. Brewer is basically collateral attack on the underlying commitment. He's not trying to prohibit the sentence that was imposed. He's trying to prohibit how the sentence was administered. Now, you're saying that's not true because why? That's not true because if he's saying he didn't get six months of commitment credit, then the trial court should have given him that credit. That's what Commonwealth v. Williams is. That's what these other cases are. Heck v. Humphrey isn't going to bar his claim in the state courts. Heck v. Humphrey is something that the district court could have dealt with if you had raised it, but you didn't before the district court. Correct. We did not raise it, but it's not clear in this court whether Heck v. Humphrey is even waivable, but more to the point, the panel has waived any waiver, so we believe we can— Waived any waiver? That means he hasn't waived it. No, it does. Unless it's jurisdictional, you've waived it. Well, it hasn't been raised by appellant, and so we believe we can present it to this court in any way Heck is not waivable. Ms. Brewer, aren't we the only circuit so far that said that  Heck v. Humphrey still applies to a 1983 action such as this? We are not the only circuit. I think the first circuit is in line with this, but more to the point, even the circuits that have found that have said that if you have certain options to use, like a direct appeal or PCRA or so on, and you haven't used them, then Heck still applies. You have to exercise your options. But he has no other options now, does he? Is he either time barred or is something barred? Well, he's certainly time barred. He could have brought his claims sometime before 86. He could have brought his claims in 2001. That's interesting. The second point of your brief is that the statute of limitations bars his claims. You don't tell us, though, that you made that motion, that you moved to dismiss in the district court on that very ground and it was denied. You should have told us that, I think, shouldn't you? I'm not sure. Do you like to know these things? I appreciate that for future reference, yes. Did he never ever get paroled on any of his sentences? He was. He maxed out on everything? Well, he was paroled at least, if I accept his version of the fact, he was paroled after four years. But he couldn't be paroled after four. The first sentence was two to four, and he did four years, didn't he? No. The first sentence aggregate was three and a half to seven. He was paroled after four. I'm sorry. I'm sorry. But no, his first sentence aggregate was three and a half to seven. He only gets three and a half to seven if you combine Judge and Mayor with Montgomery County. And that is indeed what happened. Keep that separate, because the parole board wouldn't think of it that way. Okay. Well, the two to four, he served four. So he maxed out on that. Well, if I have to accept that, then yes. You don't have to. You're sorry that he didn't because part of the four years he was serving on Judge and Mayor's sentence included some of the one and a half, the front end of the Montgomery County sentence. Yeah, the front half of Montgomery County. Even though the Montgomery County sentence, I thought, was consecutive to Philadelphia County. It was consecutive and it was aggregated in terms of the time there. So they began the Montgomery County sentence running after he finished his minimum. Right. Ms. Brewer, Williams v. Consovoy has been referenced here. Can't that case be distinguished on the grounds that it was a parole case and this is, in effect, a case against Duristan, whatever role he played in this whole mess, but it's a case against Duristan for not going back and recalculating what he was entitled to? Couldn't we distinguish these two cases very easily on that grounds? No, because Williams v. Consovoy was about inadequate investigation. That was the crux of the claim in Williams v. Consovoy, and here what he's saying is that Mr. Duristan didn't adequately investigate my claim. That is the bulk of what he is arguing on the merits. Let me say one last time. Let me try this one more time. Because initially I thought Duristan was the proper party. Now I'm not sure again. Even though it's a misdemeanor, Pennsylvania is weird because you can go to state prison with a misdemeanor sentence, as you know. So if it's more than two years, it's no longer a county sentence, it's a state sentence, forgetting whether or not it's a misdemeanor. So why is Duristan in the case if it's a state sentence? They're all state sentences. They're all state sentences. Duristan is in the case because he's the person at the county prisons who calculates jail time. Yeah, he's the director of crediting and calculating time. For the county system. For the county system. But also what he does when he grants credit is he sends something to the SCI and to the courts saying, I found this, please do this. So to the extent to which he has some sort of responsibility. I mean, I don't like saying my client has some sort of responsibility, but he does have, as a defense.  It would be causation, right. The fact that he got it wrong, the state's not going to independently calculate it. Right. But there's still sort of, and on the merits, that's our argument. He did what he was supposed to do. He looked at the microfilm, he looked at the court records, he saw there were detainers pending, and also this whole sort of sentence aggregation wasn't even put before him. He wasn't required to do that. And this court said in Moore v. Tartler that even a slow, mistaken, and incompetent investigation isn't enough to demonstrate deliberate indifference to get past summary judgment. So if we have to go to the merits, I understand you're skeptical of our heck arguments. I hope I've helped to convince you otherwise. And statute of limitations, if either of those don't convince you. On the merits, Mr. Derksen did what he was supposed to do. And I think under the circumstances, your own confusion, I think, reflects the fact that Mr. Derksen doesn't have to accept an inmate's word for it. What he's supposed to do is investigate, see if he can credit the time, and if it's a state sentence, make the recommendation. He looked at it. He said, I can't do it. Maybe what you should do is talk to someone in the state system. Maybe they can help you. And respectfully, that's more than enough for summary judgment on both the claims. You're not relying upon the aliases here? I'm sorry? You're not relying upon all of the aliases here in terms of causing confusion? Well, the aliases are part of the confusion. But that's more something that's come out in the habeas petitions and so on, what I want to do. And also, despite all the aliases, your photo ID number in the Philadelphia system remains the same. So no matter what. It's supposed to. Or it's supposed to, indeed. So what I think is fair for purposes of summary judgment is what was presented to Mr. Derksen. This is probably dangerous in this case. Do you have any further questions? No. I think you're filling consensus now. 9 plus 2. 9 plus 4. I'm sorry? I'm still working on 9 plus 4. All right. Well, I hope that when you do that you'll affirm the district court. I'll figure it out. Thank you. She won't give me the opinions of that. All right. Go ahead. Just a few quick points, Your Honor. First, with regard to whether there was a guilty plea on a failure to appear, Judge Fisher, that was in our brief. And we relied to a certain extent on the district court's opinion, which said there was such a thing. He does have it in there, and I don't know where he got it from either. I think he got it from Judge Hart's R&R. I now agree that there were three retail theft guilty pleas in 1984. Second, with regard to whether Mr. Royal was paroled after four years. That can make me have a headache, because I understood what was wrong last night looking at this. But I was thinking, well, only the third one could be a felony. But the two to four, those are misdemeanor sentences. So that he was sentenced. Okay. I'm with you. Go ahead. Okay. Good. With regard to whether Mr. Royal was paroled after four years. Our brief does say that he was released in 1984, but that is incorrect. I simply did not have the facts about the Montgomery County. Our position is that Mr. Royal served the full four years starting in 1984 and ending on that sentence in 1988. Although I think he was still in on the Montgomery County sentence after that. Is Ms. Brewer right that as he was serving the full four years, after serving two years on Judge Merritt's sentence, he began serving the Montgomery County sentence? I don't think that's correct. I may not have correctly heard what she said, but I thought she was saying that after he finished the minimum of the Philadelphia sentence. There's certainly nothing in the record that would indicate that after two years he started serving a sentence in the Montgomery County case. But somehow he was still on parole in 1999, which is 11 years after 1988. Well, in his habeas petition, he didn't bring up that issue, and he lost on it as to whether he should still be on parole after all that time. Okay. But he was still, for purposes of this case, he was on parole because he was sentenced as a parole violator for that 1999 arrest. That's correct. Okay. And then just quickly with regard to Heck, I'd just like to make our position clear. Heck v. Humphrey, the Supreme Court said that a civil damages action is not the way to attack a criminal conviction or a criminal judgment. And in Williams v. Consovoy and other cases in the Supreme Court and in this court, there has always been the result of some proceeding, whether it's a disciplinary proceeding in Edwards v. Balasoff that resulted in the loss of good time credits or whether in Williams v. Consovoy it was a parole revocation proceeding. Here there was no proceeding. Well, that's why you'd have to win on your line proceeding to avoid a situation where your damage action would be a collateral attack on your confinement, basically. That's exactly right. If I understand the question correctly, this is not a collateral attack on the judgment or on the sentence. There is, very quickly, a line of Supreme Court cases starting with Pricer and going through Wilkinson v. Dobson just a few years ago. In those cases, the Supreme Court has defined what it calls the core of habeas corpus, and that is a claim that would get the prisoner out of prison sooner. Here, because Mr. Oyl was not in prison when he brought this claim, his claim for damages simply could not get him out of prison sooner. Thank you for your time. Thank you. And also, you are appointed, I believe. Is that correct, Mr. Molestar? Yes, that's correct. I really want to thank you very much for the time you put into the case. Of course, everybody now knows this is not an easy case, and people like this could not get representation. People who can't afford counsel could not get representation in cases where they should have representation if it wasn't for officers such as yourself and Covington to take on these cases. So we thank you for, when you get back, whoever the partner is that you chained to back in Covington, let him or her know also that the court really expresses its gratitude. I certainly will. Thank you very much. Can we take a break before? After that, there's no way in the world I can deal with the state action immunity doctrine. Let's have about a five-minute break, and then we'll wade through that.